Filed 10/29/13  P. v. York CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C072501 |
| Plaintiff and Respondent, | (Super. Ct. Nos. 10F02282, 10F03380) |
| v. | |
| TRAVIS YORK, | |
| Defendant and Appellant. | |

Defendant Travis York pleaded no contest to an April 2010 first degree burglary (Pen. Code, §§ 459, 460, subd (a); unless otherwise stated, statutory references that follow are to the Penal Code), admitted that he had a prior serious felony conviction (§§ 667, subds. (b)-(i), 1170.12) and that he had served a prior prison term (§ 667.5, subd. (b)).  In exchange for his admissions, several related counts were dismissed and defendant's prison exposure was limited to nine years.  Defendant's *Romero* invitation to dismiss the serious felony allegation was denied.  (*People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*).) Defendant was sentenced to prison for nine years and was awarded 854 days' custody credit and 426 days' conduct credit.

1

On appeal, defendant contends (1) he is entitled to additional conduct credit for the portion of his presentence custody that commenced on October 1, 2011; and (2) denial of his *Romero* invitation was an abuse of discretion. We affirm the judgment.

FACTS AND PROCEEDINGS

Because the matter was resolved by plea, our statement of facts is taken from the probation officer's report.

When L.K. and P.K. returned home on the evening of April 11, 2010, they found a Lexus parked in their driveway. The driver, later identified as codefendant Michaelann Campbell, said, "Oh, I must be at the wrong house." P.K. heard a noise in the garage and discovered a man, later identified as defendant, in the backyard. Defendant fled on foot and P.K. chased him. Campbell backed out of the driveway and sped away.

P.K. continued to chase defendant, who turned and confronted P.K. P.K. grabbed defendant and told him to wait for the police. Defendant tried to punch P.K., who dodged the blow. Defendant fled over a fence and escaped.

Police officers stopped the Lexus and detained Campbell, who was on searchable probation. A search of the Lexus yielded a BB gun with one magazine clip, a loaded 12-gauge shotgun, burglary tools, and a scale with white residue that appeared to be methamphetamine. Campbell admitted that the shotgun and some methamphetamine found on her person were hers.

A month later, while the burglary remained under investigation, police officers were dispatched on a report of a male adult selling methamphetamine. Officers saw the male, later identified as defendant, riding a bicycle and carrying a satchel. Defendant tried to elude the officers, but he was apprehended and then resisted arrest. During a search incident to the arrest, officers found a digital scale with amphetamine residue, baggies, a pay/owe sheet, cash, cellular telephones, and a credit card belonging to a

2

victim who, when contacted, stated she had lost her purse and incurred unauthorized card activity.

DISCUSSION

I

*Presentence Conduct Credits*

Defendant contends he is entitled to additional presentence conduct credit under recently amended section 4019, which became operative on October 1, 2011. He acknowledges that the express terms of current section 4019, enacted as part of Realignment legislation, indicate that it applies only to defendants whose crimes were "committed on or after October 1, 2011," and his crime occurred prior to that date. (§ 4019, subd. (h); see Stats. 2011, ch. 15, § 482; Stats. 2011, ch. 39, § 53; Stats. 2011, 1st Ex. Sess., 2011-2012, ch. 12, §§ 16, 35 (ABX1). Specifically, section 4019, subdivision (h), provides: "The changes to this section enacted by the act that added this subdivision shall apply prospectively and shall apply to prisoners who are confined to a county jail, city jail, industrial farm, or road camp *for a crime committed on or after October 1, 2011.* Any days earned by a prisoner prior to October 1, 2011, shall be calculated at the rate required by the prior law." (Italics added.)

Noting that "a significant portion" of his presentence custody occurred after October 1, 2011, defendant argues that "to limit the current provision for 'half-time' credits to those . . . whose crimes occurred only after a particular date violates equal protection."

In October 2009, when it enacted the former version of section 4019 (Sen. Bill No. 3X 18 (2009-2010 3d Ex. Sess.) (hereafter Sen. Bill 18)) that was at issue in *People v. Brown* (2012) 54 Cal.4th 314 (*Brown*), "the Legislature did not expressly declare whether former section 4019 was to operate prospectively or retroactively." (*Brown*, at p. 320; see Stats. 2009, 3d Ex. Sess., 2009-2010, ch. 28, § 50.) Particularly relevant for

3

present purposes, the Legislature never purported to bar the Senate Bill 18 version of section 4019 from applying to *crimes that occurred prior to* its operative date. Thus, persons who committed crimes prior to the operative date of Senate Bill 18 but served presentence custody both prior to, and following, that effective date earned *bifurcated* credit at two different rates. In concluding the statute applied prospectively only, the *Brown* court noted: "To apply former section 4019 prospectively necessarily means that prisoners whose custody overlapped the statute's operative date (Jan. 25, 2010) earned credit at two different rates." (*Brown, supra*, 54 Cal.4th at p. 322.)

In contrast, when it enacted the present version of section 4019, the Legislature expressly barred the statute from applying to crimes committed prior to its operative date, October 1, 2011. Because the present credit scheme, by its terms, does not give enhanced credit for crimes committed prior to October 1, 2011, the scheme does not allow prisoners whose custody overlapped the statute's operative date to earn credit at two different rates.

After determining that principles of statutory construction and legislative intent required the Senate Bill 18 version of section 4019 to be applied prospectively only, the court in *Brown* concluded such application did not violate principles of equal protection. (*Brown, supra*, 54 Cal.4th at pp. 322, 328-330.) In *People v. Lara* (2012) 54 Cal.4th 896, the court more recently concluded the Legislature did not violate equal protection by making its 2011 amendment of section 4019 expressly prospective. (*Id*. at p. 906, fn. 9; § 4019, subd. (h).)

Defendant claims equal protection *is* violated where, as here, prisoners in presentence custody *after October 1, 2011*, earn conduct credit at different rates depending on *whether their offense occurred* prior to that date.

" 'The obvious purpose of the new section [4019] is to affect the behavior of inmates by providing them with incentives to engage in productive work and maintain good conduct while they are in prison.' [Citation.] '[T]his incentive purpose has no

meaning if an inmate is unaware of it.' " (*Brown, supra,* 54 Cal.4th at p. 329, quoting *In re Strick* (1983) 148 Cal.App.3d 906, 913.)

As we have seen, the present version of section 4019 does not, by its terms, give enhanced credit for crimes committed prior to October 1, 2011. Nor did decisional authority extend the statute's reach beyond its textual bounds before defendant was sentenced on September 17, 2012. Thus, having committed his crime prior to October 1, 2011, defendant could not have *been aware, or even reasonably suspected, based on anything more than speculation, he would be entitled* to enhanced credit during *any* portion of his presentence incarceration, even the part occurring after October 1, 2011. The enhanced credit could not have encouraged defendant, who was unaware of any such incentive, to engage in productive work or maintain good conduct. (*Brown, supra*, 54 Cal.4th at p. 329.) This is so even though the enhanced credit *gave* such an incentive to *other* simultaneously incarcerated inmates who committed their offenses *after* October 1, 2011.

The fact the prior version of section 4019 *gave* defendant *some* incentive to engage in productive work and maintain good conduct while in prison, albeit at a lesser rate, does not require a different result. The question is whether the amendment to which defendant claims entitlement could have affected his behavior. The answer is *no*. To the extent *People v. Rajanayagam* (2012) 211 Cal.App.4th 42, 53, on which defendant relies, suggests otherwise, we respectfully decline to follow it. (See *People v. Kennedy* (2012) 209 Cal.App.4th 385, 396-397.)

Following *Brown*, we conclude the "important correctional purposes of a statute authorizing incentives for good behavior [citation] are not served by rewarding prisoners who . . . could not have modified their behavior in response." (*Brown, supra*, 54 Cal.4th at pp. 328-329.) "That prisoners who [commit crimes] before and after [present] section 4019 took effect are not similarly situated necessarily follows." (*Id.* at p. 329; see *People v. Hofsheier* (2006) 37 Cal.4th 1185, 1199; *People v. Ellis* (2012) 207 Cal.App.4th 1546,

1551-1552.) Because the groups are not similarly situated, it is not necessary to consider defendant's arguments that the proper standard of review is strict scrutiny; and that there is no compelling state interest, or rational basis, for the disparity in treatment. Defendant's equal protection claim has no merit.

## II

### *Romero*

Defendant contends the trial court abused its discretion when it denied his *Romero* invitation. He argues that the circumstances of his prior conviction, his prior good performance on parole, and the particulars of his background, character, and prospects, demonstrate that the trial court's decision falls outside the bounds of reason.

After admitting a June 2002 residential burglary as part of the negotiated plea agreement, defendant filed an invitation asking the trial court to strike the prior in the interest of justice for purposes of sentencing. (§ 1385.) Defendant claimed the prior conviction had been his girlfriend's idea and that he was simply "with her." At sentencing, defendant emphasized his methamphetamine addiction which, he acknowledged, "causes him to act in, oftentimes, an unsocial manner." He claimed he "just hasn't had what he feels is a really strong opportunity to control his narcotics addiction."

The prosecutor responded that the trial court should not strike the prior conviction because it was recent and involved the same type of criminal conduct as the present offense. In 2002, defendant had been sentenced to prison for seven years four months. The prosecutor argued that defendant posed a risk to the community.

The trial court denied the invitation, stating: "Well, we had a case in here the other day in which the defense lawyer went on about--the basic line was, How can it be that we fail our children and then we punish them for their failures? And, frankly, if [defendant] had ever shown one ounce of an inkling about thinking about considering showing up for sometime in the future to take care of his problem, then I would have

6

some sympathy for him, but at every turn, he has not. [¶] This state and this county are generous in their rehabilitative efforts, but there is no sense in having one more program that [defendant] can ignore. He has been a thief since at least the past, what, 10 or 11 years. If he had a drug problem and that's all it was, well, then I might have some consideration for that; but his drug problem, it results in--in 2002, he was sentenced on three counts of car theft, one count of grand theft. There are gun charges and out-on-bail charges in addition to the burglary in the first degree. [¶] And I don't know when he got out on parole, but he comes here on a burglary in the first degree with weapons charges that were, albeit, dismissed; and after he escapes--I guess he got away from the guy who caught him. And then a month later, he is arrested with a knife and methamphetamine and somebody else's credit cards. [¶] And even in jail, he has got a bunch of write-ups. He has five major incidents, and that was in the probation report that was written in December. [¶] So [defendant] is a thief, and for whatever reason, he has become a thief. He has not done anything to resolve that problem or taken any steps toward being a citizen, and he is right exactly where three strikes expect him to be, and he will be warehoused. He will be kept out of this community so that he cannot harm people in this community for this negotiated sentence; and if he comes back, it will be as a three-striker, and I'll be happy to send him to prison for the rest of his life to spare this county his-- well, it's not only thievery but the danger as well. [¶] When a guy comes after you and stops you from taking his property and you attempt to punch him, and when the police try to arrest him and he resists in that, I have--if [defendant] wants respect and if [defendant] wants consideration, then he is going to have to meet us not even halfway; he is going to have to take one step in that direction. And, so far, he has not done anything like that."

"The Three Strikes law is intended to restrict courts' discretion in sentencing repeat offenders. [Citation.] Section 1385, subdivision (a) allows the court to dismiss an action in the 'furtherance of justice,' and in *Romero* the court held the statute gives a

7

court discretion to strike prior conviction allegations in cases brought under the Three Strikes law. [Citation.]

"In ruling on whether to strike a prior conviction allegation, 'the court in question must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies.' [Citation.]

"The court's ruling on a motion to strike is subject to a deferential abuse of discretion standard of review. [Citation.] A 'trial court will only abuse its discretion in failing to strike a prior felony conviction allegation in limited circumstances. For example, an abuse of discretion occurs where the trial court was not "aware of its discretion" to dismiss [citation], or where the court considered impermissible factors in declining to dismiss.' [Citation.] The burden is on the party challenging the sentence to clearly show the sentence was irrational or arbitrary. [Citation.] Further, a sentence will not be reversed merely because reasonable people might disagree. ' " 'An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge.' " ' [Citation.]" (*People v. Leavel* (2012) 203 Cal.App.4th 823, 836-837; see *People v. Carmony* (2004) 33 Cal.4th 367, 377; *People v. Williams* (1998) 17 Cal.4th 148, 161; *People v. Superior Court* (*Alvarez*) (1997) 14 Cal.4th 968, 978.)

Defendant claims the trial court's denial of his *Romero* invitation was an abuse of discretion in light of the circumstances of his prior burglary conviction, which was "precipitated by his drug habit." He argues he had an "intractable drug problem which served as the catalyst for his criminal behavior." But the trial court impliedly rejected any claim that the problem was "intractable" when it found that defendant had never appropriately addressed it. The court explained that, if defendant "had ever shown one ounce of an inkling about thinking about considering signing up for sometime in the

8

future to take care of his problem, then I would have some sympathy for him, but at every turn, he has not. [¶] This state and this county are generous in their rehabilitative efforts, but there is no sense in having one more program that [defendant] can ignore." The express finding that defendant did not treat his drug problem amply supports an implied finding that he has not shown an intractable problem, i.e., one that defies treatment.

Defendant next notes that he "had successfully completed parole for that prior conviction." But his trial counsel effectively acknowledged the limited utility of that fact when he noted, in a different context, that defendant's present conviction is "too new" and "too recent" and shows he "has maintained a criminal record." The fact that parole was successfully completed shortly before the present offense does not mean that the refusal to strike the prior conviction was an abuse of discretion.

Defendant further claims the trial court's refusal to strike the prior conviction was an abuse of discretion because "his prospects when he gets out are excellent, with support from his family, a fiancé [*sic*] and employment." But as defendant acknowledged in his invitation, his employment was not supportive; rather, it set the stage for the present case when it led him to associate with a person who "was into drugs." Because defendant had not "shown one ounce of an inkling about thinking about considering signing up for sometime in the future to take care of his [addiction] problem," the trial court could infer that, notwithstanding support from his family and fiancée, defendant's "prospects when he gets out" are far from "excellent."

Defendant disagrees, claiming the trial court acknowledged his drug problem "in a dismissive way and completely failed to factor in the way a drug addict fails to reason." But the court's comments did not demonstrate that the court did not appreciate the fact that a drug addict "fails to reason" but instead showed that the trial court, properly, placed special emphasis on defendant's inability or refusal over the years to take any steps towards rehabilitation. Defendant knows better than anyone that he may be unable to reason while under the influence of drugs and defendant himself has failed to do

9

anything to address his addiction and rectify that inability. Defendant's inabilities are of his own making and his failure to take even minimal steps to address his addiction and, thus, those inabilities are his responsibility, not the court's.

The question before the court was whether defendant fell outside the spirit of the three strikes law. (*People v. Leavel, supra,* 203 Cal.App.4th at pp. 836-837.) Because addiction is an underlying theme of many, if not most, three strikes cases, the fact defendant "does not necessarily reason in the same way as a person who is not suffering from such an addiction" can hardly be said to bring defendant outside the spirit of that law.

In sum, the trial court's refusal to dismiss defendant's 2002 prior conviction for purposes of sentencing was not an abuse of discretion. (*People v. Leavel, supra,* 203 Cal.App.4th at pp. 836-837.)

DISPOSITION

The judgment is affirmed.

                                              HULL               , J.

I concur:

       RAYE          , P. J.

I concur in the judgment and opinion except as to Part I of the Discussion, as to which I concur in the result.

       BLEASE       , J.